**UNITED STATES ex rel. Sirijo TAN-FARA, Relator-Appellant,**

v.

**P. A. ESPERDY, District Director, Immigration and Naturalization Service, Respondent-Appellee.**

**No. 561, Docket 29615.**

United States Court of Appeals
Second Circuit.

Argued June 15, 1965.

Decided June 21, 1965.

---

**150**

Edith Lowenstein, New York City, for relator-appellant.

James G. Greilsheimer, Sp. Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern Dist. of New York, Francis J. Lyons, Sp. Asst. U. S. Atty., on the brief), for respondent-appellee.

Before KAUFMAN, HAYS and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge:

The appellant Sirijo Tanfara, a native and citizen of Yugoslavia, is presently detained by the District Director of the Immigration and Naturalization Service pursuant to a final order of deportation, outstanding since February 26, 1953. Concededly, Tanfara is deportable because at the time of his last entry into the United States in 1945 as a crewman he was an immigrant not in possession of a valid immigrant visa. See Immigration and Nationality Act of 1952, § 211 (a) (1), 8 U.S.C. § 1181(a) (1). The only question raised throughout the extraordinarily protracted, circuitous course of these proceedings, including the instant habeas corpus action, is whether the appellant is eligible for discretionary relief from deportation. After reviewing all revelant materials, Judge Levet dismissed a writ of habeas corpus allowed on Tanfara's behalf, but stayed deportation pending this expedited appeal. We affirm.

In 1953, a hearing officer of the Immigration and Naturalization Service ruled that appellant was deportable and, as a matter of discretion, was ineligible for suspension of deportation under Section 19(c) (2) of the Immigration Act of 1917, as amended, 8 U.S.C. (1946 ed. Supp. V), § 155(c).[1] The Board of Im-

---

1. That section provides, in part, that "[i]n the case of any alien * * * who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * (2) suspend deportation of such alien if he is not ineligible for naturalization or if ineligi-ble, such ineligibility is solely by reason of his race, if he finds (a) that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien; or (b) that such alien has resided continuously in the United States for seven

migration Appeals affirmed the denial of suspension at that time. But, after a decade of legal maneuvers during which deportation was not effectuated, the Board, on March 14, 1963, remanded the proceeding to a Special Inquiry Officer "for the purpose of affording [appellant] an opportunity to renew and prosecute his application for a stay of deportation under Section 243(h) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1253(h),[2] "and for such further action as may be appropriate to a proper disposition of this case."

After holding a new hearing, the fairness of which is not questioned, the Special Inquiry Officer denied relief under Section 243(h) of the 1952 Act and Section 19(c) (2) of the 1917 Act. The Board of Immigration Appeals, reviewing each of these adverse determinations as well as other questions, held on September 24, 1963 that there was no merit to the applications for suspension of deportation under either the Acts of 1952 or 1917. This decision of the Board was then challenged in all respects by a petition for review, 8 U.S.C. (1964 ed.) § 1105a, filed in the Court of Appeals for the Third Circuit. That court, after full briefing, argument, and examination of the record "in the light of the controlling statutes," was "satisfied that the administrative decision" "finding that the petitioner Tanfara was a deportable alien and ineligible for any form of discretionary relief from deportation" "was correct." Tanfara v. I. N. S., 331 F.2d 851, 852 (3 Cir. 1964). When, thereafter, the appellant was transferred to the custody of the I. N. S. District Director in New York so that after all these years the warrant of deportation might be finally executed, he obtained the instant writ of habeas corpus, reasserting his claim that the I. N. S. erred in refusing to suspend deportation under Section 19(c) (2) of the 1917 Act.

We agree with the District Court that because the Court of Appeals for the Third Circuit reviewed and upheld the Board of Immigration Appeals' denial, in 1963, of the application for discretionary relief under the 1917 Act as well as the other pertinent statutes, further judicial review by means of habeas corpus was, without more, not warranted under the circumstances of this case. As enacted in 1961, Section 106(c) of the Immigration Act, 8 U.S.C. (1964 ed.) § 1105a(c), provides that

> No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceedings, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order.

The legislative history reveals that Congress sought, by this new procedural scheme, to eliminate dilatory litigational tactics on the part of aliens subject to deportation and "to create a single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States." H.R.Rep.No.1086, 87th Cong., 1st Sess. 22–24, U.S.Code Cong. & Admin.News 1961, p. 2950 (1961). See also Foti v. I. N. S., 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

The Third Circuit Court of Appeals had jurisdiction to review the Immigration Service's denial of suspension under the 1917 Act, since the petition for review was filed in that court within six months of the agency's final order of September 24, 1963, as required by Section 106(a) (1), 8 U.S.C. § 1105a(a) (1). Cf. Liadakis v. I. N. S., 339 F.2d 447 (4 Cir. 1964). Nor do we find any merit to

years or more and is residing in the United States upon the effective date of this Act."

**2.** That section reads: "The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason."

152

the claim that the court did not consider the Service's adverse disposition of that application. Moreover, this is not a case where "the petition presents grounds which the court finds could not have been presented in [the] prior proceeding," a situation which might exist if the applicable law had changed during the interim. In addition, we find no basis for invoking the statutory exception for situations where "the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order."

■ On the entire record before us, therefore, we find no merit in the contention that Section 106(c), as applied, unconstitutionally suspends the writ of habeas corpus in violation of Article I, Section 9, Clause 2. On the facts of this case, the petition for review was both adequate and effective to test the legality of Tanfara's detention. Cf. United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The limitation of the writ to cases where the statutory exceptions do not apply and the administrative decision has not been judicially reviewed serves to conserve institutional resources by preventing repetitious litigation and securing the finality so necessary in a workable judicial system.

■ Even were we to reach the merits of Tanfara's claim for discretionary relief, the result would be the same. As set forth in footnote 1, supra, Section 19(c) of the 1917 Act authorizes the Attorney General to suspend deportation if, among other conditions, the alien "has resided continuously in the United States for seven years or more." Tanfara contends that this provision applies to him because he has resided continuously in this country since 1945. But even assuming the validity of this factual contention, Section 19 further provides that the Attorney General's order suspending deportation must be approved by a concurrent resolution of Congress and if Congress fails to give such approval, "the Attorney General shall thereupon deport such alien." The Special Inquiry Officer who conducted the 1963 proceedings reasoned that since Congress, in 1962, had excluded crewmen from the suspension provisions of the 1952 Act, Section 244 (f) (1), 8 U.S.C. § 1254(f) (1), it was most improbable that the legislative branch would approve suspension in Tanfara's case because he originally entered this country as a crewman. As we read United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), it was proper to consider Congress' present attitude in passing on applications for suspension of deportation under Section 19 of the 1917 Act, and we have no basis for believing that the Special Inquiry Officer's estimation of the Congressional attitude was erroneous. Thus, assuming *arguendo* that Tanfara's rights under the 1917 Act have been preserved by the savings clause of Section 405(a), 8 U.S.C. § 1101 note, we see no basis for finding error in the Service's denial of Tanfara's application for discretionary relief. Although it appears that appellant has been continuously residing in the United States for some twenty years and that, but for the fact that he entered this country as a crewman, the Attorney General might in his discretion suspend deportation, the statutory scheme strictly delimits our power and prevents granting judicial relief.

Affirmed.